UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TIMOTHY BREWER,                 : CIVIL NO: **1:CV-06-00470**
                                :
              Plaintiff         :
                                :
        v.                      : (Judge Conner)
                                :
                                : (Magistrate Judge Smyser)
MENNO HAVEN, INC.,              :
                                :
              Defendant         :


### REPORT AND RECOMMENDATION


     The plaintiff, Timothy Brewer, commenced this action by
filing a complaint on March 6, 2006.  The defendant, Menno
Haven, Inc., is the plaintiff's former employer.


     The plaintiff alleges the following facts in his
complaint.  The defendant is a corporation operating a nursing
home in Franklin County, Pennsylvania.  The plaintiff began his
employment with the defendant on October 28, 1997 as a night
cook.  The plaintiff subsequently became a team leader in the
defendant's dietary department.


     In May of 2004, Robin Rosenberry, a female co-worker of
the plaintiff, tossed a small, square box to the plaintiff and

told the plaintiff that she was going to give the box to another co-worker, Mary Fasso, as a practical joke. The reason for the practical joke was that Fasso was planning on going on a date with Rosenberry's son. After reading the description on the box's exterior, the plaintiff realized that the box was said to contain a condom. The plaintiff, however, did not open the box to verify its contents. The plaintiff returned the box to Rosenberry by tossing it to her onto a nearby table.

After retrieving the box, Rosenberry apparently followed through with her practical joke by giving the box to Fasso. The plaintiff was not present when the transaction took place and was not told whether or not the practical joke had come to fruition.

Approximately one week later, on May 28, 2004, the plaintiff was summoned to a meeting with Human Resources personnel. He was questioned about the "condom incident" which had been reported to Human Resources by a third party. The plaintiff explained his understanding of the incident to the Human Resources representative who was heading the investigation, and then he returned to work. Rosenberry and Fasso were also questioned about the incident and both

2

indicated that they were not offended by it and that they
understood it to be a joke.

Later on May 28, 2004, the defendant terminated the
plaintiff's employment.  The defendant asserted that the
plaintiff had not used good judgment when he failed to report
the incident to upper management.  The plaintiff, however,
believes that he was the victim of sex discrimination as
neither Rosenberry nor Fasso was terminated from her position
as a result of the incident, although three or four weeks after
the plaintiff was terminated Rosenberry was suspended from work
for five days (three of which were her regularly scheduled days
off).  After his termination, the plaintiff's position was
filled by a less qualified female with no management
experience.

The plaintiff alleges that the defendant discriminated
against him by terminating his employment based on his sex.  In
addition to his termination, the plaintiff also alleges that
the defendant discriminated against him on the basis of his sex
by, prior to his termination, denying his applications for
multiple open positions for which he had applied.  He alleges
that those positions were given to less qualified females.

3

After his termination, a former co-worker informed the plaintiff that the defendant was reporting to his former co-workers that he had been fired for being a "sexual predator."[1]

After his termination, the plaintiff applied for unemployment compensation benefits.  His initial application for benefits was denied based on allegations made by the defendant in its response to his application for benefits.  However, after an appeal and hearing, the initial decision denying benefits was reversed and the plaintiff was awarded benefits.

The plaintiff alleges that he was without income for approximately four months during which time he nearly lost his vehicle to repossession.  The plaintiff is diabetic, and he alleges that as a result of his termination he was left without health insurance and that he was unable to afford his prescription medications.  He alleges that that combined with the stress and depression that resulted from his termination

_____

1.  For purposes of the pending Rule 12(b)(6) motion, this is construed as an allegation that the defendant made such a report to the plaintiff's former co-workers.

4

caused his diabetes to rage out of control.  As a former armed
services member, the plaintiff was eventually able to obtain
medical treatment at the Veterans Affairs Hospital in
Martinsburg, West Virginia.  That hospital is a nearly three
hour round trip drive for the plaintiff, and he made more than
thirty trips to that hospital.

The plaintiff alleges that he was forced to undergo
counseling for feelings of anxiety, depression and anger
resulting from his termination and from the false remarks that
the defendant was communicating to his former co-workers and
later to third parties.

After his termination, at the request of residents, the
plaintiff visited the defendant's nursing home on two
occasions.  He remained in the facility's common areas during
both visits, but he was forced by the defendant to leave the
premises without cause.  During the second visit, while the
plaintiff was in the process of embracing a resident, a police
officer with the Chambersburg Borough Police Department
approached the plaintiff from behind, grabbed his arm, and led
him out of the building.  The plaintiff alleges that the
officer was acting on false information provided by the

defendant and was acting as an agent of the defendant.  This eviction was embarrassing and humiliating to the plaintiff.

The plaintiff has not returned to visit the residents of the nursing home since his second eviction for fear or what may happen to him, and his inability to visit the residents has caused him additional pain and suffering as some of the residents have passed away.

Other former employees who had been previously terminated by the defendant have not been denied access to the facility subsequent to their termination and have visited with residents and staff at the facility.

During an investigation (requested by the plaintiff) of his second eviction, two of the defendant's employees maliciously and deliberately slandered the plaintiff's good name and reputation by reporting to Victoria Johnson, the ombudsmen for the Franklin County Office on Aging, that the plaintiff's employment had been terminated because he had made sexual advances to a minor.  This defamatory allegation was later communicated by Johnson to Tom Roth, an investigator with the Department of Public Welfare.  Roth reported the allegation

to the plaintiff when the plaintiff contacted him to check on the status of the investigation.

The plaintiff alleges that the defendant informed Johnson that the plaintiff had lost his unemployment compensation claim because he was a sexual predator and that Johnson relayed that information to Roth.  The plaintiff alleges that at the time that the defendant communicated that information to Johnson, the Unemployment Compensation Service Center had not yet issued a determination regarding his right to benefits.  The plaintiff alleges that the information was privileged, confidential information regarding his employment which had no relevance to the investigation being undertaken.

Subsequent to his termination, the plaintiff completed numerous job applications to secure new employment, but he received no response to those applications.  The plaintiff believes that the defendant was providing negative job references to his prospective employers.

The complaint contains six counts.  Count I is a claim for sex discrimination under Title VII, 42 U.S.C. § 2000(e) *et seq.* Count II is a claim for sex discrimination under Pennsylvania's

7

Human Relations Act (PHRA), 43 P.S. § 951 *et seq.*  Count III is a state law claim for defamation.  Count IV is a state law claim for invasion of privacy.  Count V is a state law claim for intentional infliction of emotional distress.  Count VI is state law claim for battery.

On May 19, 2006, the defendant filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and a brief in support of that motion.  On June 5, 2006, the plaintiff filed a response and a brief in opposition to the motion.  On June 15, 2006, the defendant filed a reply brief.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint; the court must decide whether, even if the plaintiff were able to prove all of his allegations, he would be unable to prevail. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In connection with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the burden is on the moving party to show that there is no actionable claim. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).  When deciding a motion to dismiss, the court must

accept all material allegations of the complaint as true and draw all inferences in the light most favorable to the plaintiff. *Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 449 (M.D. Pa. 1991).  However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Id*. at 449-50.  A complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

The defendant contends that the plaintiff has failed to state a claim upon which relief can be granted for sex discrimination in violation of Title VII and the PHRA because the plaintiff has admitted that he was fired for improperly handling the condom incident.

In support of its argument, the defendant cites paragraph 21 of the plaintiff's complaint wherein the plaintiff alleges that "[l]ater that same day Plaintiff's employment was terminated, as Defendant alleged that Plaintiff had not used

9

good judgment when he failed to report the incident to
Defendant's upper management staff [.]"  The defendant
construes the allegation in paragraph 21 as an admission by the
plaintiff that he was fired for improperly handling the condom
incident.  However, the defendant has misconstrued the
plaintiff's allegation in paragraph 21.  The plaintiff has not
alleged that he was fired for improperly handling the incident.
Rather, the plaintiff merely alleges that that was the reason
given by the defendant for firing him.  In other paragraphs of
the complaint, the plaintiff alleges that the defendant fired
him because of his sex. *See Doc. 1 at ¶¶ 10 & 22.*  A reasonable
construction of the allegations in the complaint is that the
reason stated by the defendant for firing the plaintiff was a
pretext for sex discrimination.  Accepting all material
allegations of the complaint as true and drawing all inferences
in the light most favorable to the plaintiff, as we must when
deciding a motion to dismiss, we conclude that the plaintiff
has stated a claim for sex discrimination.

   The defendant argues that the plaintiff's failure to
intervene in the condom incident could have been construed as
participation by a supervisory employee in an act of harassment
and could have subjected the defendant to liability under Title

VII and the PHRA had it not taken the appropriate corrective action of terminating the plaintiff.  It is not clear, however, that terminating the plaintiff was necessarily the appropriate corrective action.  In any event, the defendant's argument assumes that the plaintiff was fired because of his failure to report the incident.  However, as discussed above, the plaintiff has alleged that the was fired because of his sex and not because of his failure to report the incident.

The defendant contends that the plaintiff has failed to state a claim for defamation.

In an action for defamation under Pennsylvania law, the plaintiff has the burden of proving: 1) the defamatory character of the communication; 2) its publication by the defendant; 3) its application to the plaintiff; 4) the understanding by the recipient of its defamatory meaning; and 5) the understanding by the recipient of it as intended to be applied to the plaintiff. *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001).  "Additionally, in order to recover damages, the plaintiff must demonstrate that the statement results from fault, amounting at least to negligence, on the part of the defendant." *U.S. Healthcare v. Blue Cross of*

11

*Greater Philadelphia,* 898 F.2d 914, 923 (3d Cir. 1990).

"Finally, the plaintiff has the burden of proving any special

harm resulting from the statement." *Id.*  "The defendant, in

turn, can defend against a defamation action by proving the

truth of the statement, that the subject matter of the

statement was of public concern, or that the occasion on which

the statement was made or published was of privileged

character." *Id. (footnotes omitted).*  When the defendant raises

the defense of privilege, the burden shifts to the plaintiff to

show abuse of the conditionally privileged occasion. *Id.*


     The defendant argues that the complaint fails to state a

defamation claim upon which relief can be granted because the

allegedly defamatory remarks were work place communications

related to employee discipline which are conditionally

privileged and that the plaintiff has not pled that there has

been an abuse of a conditionally privileged occasion.


     Federal Rule of Civil Procedure 8(a)(2) requires no more

than that a complaint include "a short and plain statement of

the claim showing that the pleader is entitled to relief."

"Complaints 'need not plead law or match facts to every element

of a legal theory.'" *Weston v. Pennsylvania*, 251 F.3d 420, 429

(3d Cir. 2001)(quoting *Krieger v. Fadely*, 211 F.3d 134, 136
(D.C.Cir. 2000)).  "[A] plaintiff generally need not explicitly
allege the existence of every element in a cause of action if
fair notice of the transaction is given and the complaint sets
forth the material points necessary to sustain recovery."
*Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113,
124 (3d Cir. 1998).  The statement required by Rule 8(a)(2)
"must simply 'give the defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests.'"
*Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)(quoting *Conley
v. Gibson*, 355 U.S. 41, 47 (1957)). "This simplified notice
pleading standard relies on liberal discovery rules and summary
judgment motions to define disputed facts and issues and to
dispose of unmeritorious claims." *Id.*

The plaintiff alleges in the complaint that the defendant
caused damage to his reputation by knowingly, recklessly and/or
negligently publishing comments about him to third parties that
it knew or should have know were false.  The plaintiff alleges
that the defendant reported to the plaintiff's former co-
workers that he had been fired for being a sexual predator and
that the defendant told Victoria Johnson that he had been fired
because he made sexual advances to a minor.  The plaintiff

13

alleges that the comments were defamatory, were published
maliciously and/or negligently, and caused him injury.  The
complaints states a defamation claim upon which relief can be
granted.  If the defendant establishes that the statements were
conditionally privileged, in order to recover the plaintiff
will bear the burden of establishing that the privilege was
abused.  However, the complaint does not fail to state a claim
upon which relief can be granted because the plaintiff has not
alleged that the defendant breached a conditional privilege.

The defendant contends that the complaint fails to
state a claim for invasion of privacy.

"An action for invasion of privacy is comprised of four
distinct torts: (1) intrusion upon seclusion, (2) appropriation
of name and likeness, (3) publicity given to private life and
(4) publicity placing the person in a false light." *Kline v.
Security Guards, Inc.,* 386 F.3d 246, 259-60 (3d Cir. 2004).

The plaintiff alleges that the defendant, through the
statements, words and conduct of its agents, invaded his right
to privacy by intrusion on his solitude and well-being, which

caused and continues to cause mental suffering, shame and
humiliation.

    In his brief, the plaintiff focuses on the tort of false
light invasion of privacy.

    "The tort of false light-invasion of privacy involves
'publicity that unreasonably places the other in a false light
before the public.'" *Rush v. Philadelphia Newspapers, Inc.,* 732
A.2d 648, 654 (Pa.Super.Ct. 1999)(quoting *Strickland v. Univ.
of Scranton,* 700 A.2d 979, 987 (Pa.Super.Ct. 1997)).  "A cause
of action for invasion of privacy will be found where a major
misrepresentation of a person's character, history, activities
or beliefs is made that could reasonably be expected to cause a
reasonable man to take serious offense." *Id.*  "The elements to
be proven are publicity, given to private facts, which would be
highly offensive to a reasonable person and which are not of
legitimate concern to the public." *Id.*

    The plaintiff alleges that the defendant told others that
he was fired because he was a sexual predator and because he
made sexual advances to a minor.  It is not clear from the
allegations in the complaint to how many people these

15

statements were made.  Thus, it is not clear that the plaintiff will be able to establish the publicity element of his false light claim.  However, that is an issue that can be addressed in discovery and, if necessary, in connection with a motion for summary judgment.  Given the liberal requirements of notice pleading, we can not say that the plaintiff has failed to state an invasion of privacy claim upon which relief can be granted.

The defendant argues that the complaint fails to state a claim upon which relief can be granted for intentional infliction of emotional distress.

The Restatement (Second) of Torts § 46(1) defines the tort of intentional infliction of emotional distress as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  The Pennsylvania Supreme Court has not expressly recognized a cause of action for intentional infliction of emotional distress and has not formally adopted § 46 of the Restatement.  However, without deciding whether a cause of action for intentional infliction of emotional distress is recognized in Pennsylvania,

16

it has cited the Restatement as setting forth the minimum

elements necessary to sustain such a cause of action. *Taylor v.*

*Albert Einstein Medical Center,* 754 A.2d 650, 652 (Pa. 2000).

To be actionable the "conduct must be so outrageous in

character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized society." *Hoy v.*

*Angelone*, 720 A.2d 745, 754 (Pa. 1998)(quoting *Buczek v. First*

*Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super.Ct.

1987)).  "Cases which have found a sufficient basis for a cause

of action of intentional infliction of emotional distress have

had presented only the most egregious conduct." *Id.* (citing for

example *Papieves v. Lawrence,* 263 A.2d 118 (Pa.

1970)(defendant, after striking and killing plaintiff's son

with automobile and failing to notify authorities or seek

medical assistance, buried body in a field where it was

discovered two months later and returned to parents); *Banyas v.*

*Lower Bucks Hosp.,* 437 A.2d 1236 (Pa.Super.Ct. 1981)(defendants

intentionally fabricated records to suggest that plaintiff had

killed a third party which led to the plaintiff being indicted

for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595

F.2d 1265 (3d Cir. 1979)(defendant's team physician released to

17

press information that the plaintiff was suffering from a fatal disease, when physician knew such information was false)). Recovery for the tort of intentional infliction of emotional distress is reserved for "only the most clearly desperate and ultra extreme conduct." *Id.* at 754.

We conclude that the actions and statements by the defendant, as alleged by the plaintiff, are not so outrageous in character and so extreme in degree as to be actionable in a claim for intentional infliction of emotional distress. Accordingly, it will be recommended that the plaintiff's claim for intentional infliction of emotional distress (Count V) be dismissed.

Count VI of the complaint is a claim for battery against the defendant based on the police officer grabbing the plaintiff to escort him out of the facility.  The defendant moved to dismiss the battery claim.  In his brief, the plaintiff indicates that he agrees to voluntarily withdraw his claim for battery.  It will be recommended that the plaintiff's claim for battery (Count VI) be dismissed.

18

Based on the foregoing, it is recommended that the defendant's motion (doc. 7) to dismiss the complaint be granted in part and denied in part.  It is recommended that Counts V & VI of the complaint be dismissed.  It is recommended that the motion to dismiss be otherwise denied.  Finally, it is recommended that the case be remanded to the undersigned for further proceedings.


                                        **_/s/ J. Andrew Smyser_**
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  July 13, 2006.